# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| TOMMY BROWNER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-167 |
| | ) | |
| WARDEN AARON | ) | |
| PINEIRO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court previously noted that *pro se* plaintiff Tommy Browner, Jr. had failed to strictly comply with deadlines and procedural rules in this case.   *See* doc. 16.   Among the issues the Court discussed in that Order was Browner's failure to timely return the Consent to Collection of Fees from Trust Account form.   *Id.* at 3.   It directed him to show cause why he failed to do so.   *Id.*   He has returned the form and explained that he attempted to return it timely, but it was apparently lost in the mail. *See* doc. 17.   The Court accepts that explanation and will proceed to screen his Amended Complaint.   *See* 28 U.S.C. § 1915A.   However, Browner has requested leave to amend his complaint again.   *See* doc. 18.

1

His response to the Court's Order also includes several vague requests that merit comment.   *See* doc. 17 at 4.

First, Browner is entitled to further amend his Complaint.   *See, e.g., Foman v. Davis*, 371 U.S 178, 182 (1962) ("In the absence of any apparent or declared reason . . . [leave to amend] should, as the rules require, be 'freely given.'")   As discussed more fully below, his Amended Complaint alleges that he was sprayed with "OC pepper spray," without sufficient justification, "slammed" on a concrete floor while handcuffed, resulting in injuries to his mouth, teeth, and shoulder, pepper sprayed again, and denied decontamination and medical care.   Doc. 15 at 14-17. He also alleges that he was "falsely convicted," apparently in a prison disciplinary matter, and retaliated against for filing a grievance.   *Id.* at 23-24.   The Motion to Amend seeks only to add addresses for several defendants.   *See generally* doc. 18.   His request to amend his pleading

to supply that additional identification information is **GRANTED**.[1]
Doc. 18.

In Browner's response to the Court's prior Order he makes several
vague requests that merit comment.   He alleges, in a wholly conclusory
fashion, that delays in his receipt of documents from the Court amounts
to "interference with [his] ongoing litigation."   Doc. 17 at 3.   He
"request[s] intervention on [his] behalf."   *Id.*   Although he concedes that
"[i]t is unclear as to what can be done," *id.*, he suggests the Court
"intervene . . . by putting the Warden on notice of interference and by
reconsidering Plaintiff[']s motion to appoint counsel."   *Id.* at 4.

Plaintiff's request that the Court "intervene" in this litigation does
not seek any cognizable relief.   Moreover, the Warden of Smith State
Prison, where Browner is currently incarcerated, is not a party to this
case.   To the extent that Browner seeks relief of any description related
to the conditions of his incarceration at Smith State Prison, he must do
so through another civil action.   The Court will take no further action on

---

[1]  Since the proposed amendment does not add any allegations or claims to the
Amended Complaint, resubmission of the Second Amended Complaint is not
necessary.   The Clerk is **DIRECTED** to docket Browner's Amended Complaint, doc.
15, as his Second Amended Complaint and attach his Motion to Amend, doc. 18 at 1-
2, as an Exhibit.

Browner's vague suggestions. To the extent that he believes he is entitled to some relief in this lawsuit based on alleged inefficiencies in the mail, he remains free to seek such relief by a properly filed and supported motion.

To the extent that Browner seeks to revisit the Court's prior denial of his request for appointed counsel, he does not identify any meritorious grounds to do so. The Court previously denied his request. Doc. 10 at 3-5. His allegation that an Order dated July 19, 2023 was not delivered until August 3, 2023 does not alter the Court's conclusion that it presents no " 'exceptional circumstance' that warrants appointment of counsel." Doc. 10 at 4 (quoting *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990)). It certainly is not sufficient to require reconsideration of that order. *See, e.g., Ellison v. Unknown*, 2023 WL 5962098, at *1 (S.D. Ga. Sept. 13, 2023) ("Reconsideration of a previous order is an extraordinary remedy, to be employed sparingly." (internal quotation marks and citation omitted)). The application of the "prison mailbox rule," *see, e.g., Williams v. McNeil*, 557 F.3d 1287, 1290 n. 2 (11th Cir. 2009) ("[A] *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."), and the provision for extensions of time under

4

the Federal Rules, *see, e.g.,* Fed. R. Civ. P. 6(b), provide ample means to address the kinds of delays that Browner has experienced.   To the extent that Browner intended his filing as a Motion for Reconsideration or a renewed Motion to Appoint Counsel, it is **DENIED**.   Doc. 17.

Having addressed those preliminary matters, the Court may proceed to screen Browner's claims.   *See* 28 U.S.C. § 1915A.   Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).   Conclusory allegations, however, fail.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).   As Browner is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed.   *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Browner splits his factual allegations into two general sections. The first involves the events surrounding an incident of alleged excessive force.   On October 19, 2022, after Browner engaged in a brief verbal

confrontation with several guards, he complained to another "about the harassment [he] was experiencing . . . ."   Doc. 15 at 12-14.   While he was discussing the "harassment," one of the officers involved in the original confrontation, Defendant Gibbs, approached and "without warning or provocation" sprayed Browner in the face with pepper spray.   *Id.* at 14-15.   Browner was handcuffed and taken to "medical," and Defendant Brown "directed" Defendants Durant and Zeck to take him to "lockdown." *Id.* at 15.   When they arrived at a cell, Zeck and Durant lifted him by his arms, while he was handcuffed, and "slammed" him to the floor on his face.   *Id.*   The impact injured his lip, chipped his tooth, "exacerbated pain to [his] pre-existing right rotator cuff," and injured his left shoulder. *Id.* at 15-16.   After the officers exited the cell and removed Browner's handcuffs, Durant sprayed pepper spray into the closed cell.   *Id.* at 17. Browner was left in the cell exposed to the pepper spray for "an hour." *Id.*   He was eventually taken "to medical," but Defendant Glen refused to allow him to decontaminate from the spray.   *Id.* at 18.   Another unidentified officer, Defendant Jane Doe, refused his subsequent request for medical attention and a shower. *Id.* at 18-19.   He was not permitted to shower for two days.   *Id.* at 19.

Browner asserts a number of claims arising from those factual allegations.   *See* doc. 15 at 19-22.   Several of those claims may be resolved with dispatch.   First, Browner alleges that several defendants are "liable under Respondeat Superior."   *See, e.g.,* doc. 15 at 21.   Section 1983 does not permit such claims.   *See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)) ("Section 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability of *respondeat superior*.").   Browner also alleges that various defendants "violat[ed] GDC . . . policy."   *See, e.g.,* doc. 15 at 20.   However, "failure to follow the prison regulations alone cannot form the basis for a § 1983 claim." *Malone v. Bailey*, 2020 WL 8172706, at *2 (S.D. Ga. Dec. 22, 2020). Browner's *respondeat superior* and policy-based claims are, therefore, **DISMISSED**.

It is well-settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019).   "In considering an Eighth

Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted).   Moreover, officers who witness excessive force and fail to intervene may be liable for their failure.   *See, e.g., Jackson v. Catanzariti*, 2019 WL 4874809, at *11 (S.D. Ga. Oct. 2, 2019) (discussing law applicable to failure to intervene in excessive force cases).   While Browner's allegations do not establish any defendant's culpable intent, they are sufficient to be served, at least upon defendants Brown, Gibbs, Durant, and Zeck.

Browner's allegations that he was not provided with medical care after he was pepper sprayed, or allowed to decontaminate, implicate a deliberate indifference claim.   To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . " *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent;

8

(3) resulting in an injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 33 F.3d 1325, 1331 (11th Cir. 2008).

To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 62 F.3d 557, 564 (11th Cir. 2010). The Eleventh Circuit has recognized "that exposure to pepper spray without adequate decontamination can constitute a serious medical need." *Barcelona v. Rodriguez*, 847 F. App'x 739, 742 (11th Cir. 2021). Browner's allegations that various defendants were aware of his ongoing contamination by the pepper spray and failed to permit him to decontaminate is sufficient to allege their respective deliberate indifference. Taking Browner's allegation that he was not provided with medical care or an opportunity to decontaminate after being pepper sprayed as true, therefore, he has

alleged at least one[2] deliberate-indifference claim against Brown, Glen, Zeck, Durant, and Jane Doe.

Browner's second set of factual allegations relate to his complaints about the treatment described above. Those allegations are considerably less clear. Browner alleges that Defendant "Gibbs . . . wrote false reports in which [Browner] was falsely convicted and denied due process when [D]efendant . . . Pineiro viewed the incident but failed to overturn [his] conviction, also by denying [him] the right to view the footage which was recorded by the facility's camera system." Doc. 15 at 23. He vaguely asserts that Pineiro "is responsible for punishing 3 times for 1 occurrence." *Id.* He also alleges that Pineiro retaliated against him for filing a grievance by interfering with calls Browner had scheduled with an attorney and placing him in "lockdown." *Id.* at 24.

Browner's allegation that he was retaliated against for filing a grievance implicates his First Amendment rights. The First Amendment forbids prison officials from retaliating against prisoners for exercising their First Amendment rights. *Thomas v. Evans*, 880 F.2d

---

[2] Whether Browner has sufficiently alleged deliberate indifference to any of the other injuries he allegedly suffered, including his tooth and shoulder injuries, can be addressed by Defendants upon service.

1235, 1241 (11th Cir. 1989).   "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."   *Id.* at 1242.   Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising [his First Amendment rights]."   *Id.*   "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal connection between the retaliatory action . . .   and the protected speech."   *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations and alterations omitted); *see also Smith v. Fla. Dep't of Corr.,* 713 F.3d 1059, 1063 (11th Cir. 2013) (identifying elements for a retaliation claim).   Recognizing "both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with . . . particular care."   *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (Calabresi, J.), *abrogated on other grounds by Tangreti*

*v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *see also, e.g., Skinner v. Sproul*, 2015 WL 196191, at *7 (M.D. Ga. Jan. 14, 2015).

Although submitting a written grievance is clearly protected speech, *see, e.g., Redd v. Conway*, 160 F. App'x 858, 862 (11th Cir. 2005), Browner's allegations on the remaining elements are too vague to state any claim.    To be sure, temporal proximity between the protected conduct and the alleged adverse action may be relevant to a showing of causation, but Browner's allegations are speculative and conclusory.    He alleges that Pineiro interfered with a call from his attorney after he "learned that [Browner's] grievance had been forwarded to the Criminal Investigations [D]ivision," doc. 15 at 23, but he alleges no fact that supports Pineiro's knowledge.    There is also no allegation that Pineiro actually took any action to interfere, merely insinuation.    *See id.* at 24 (alleging Pineiro "made it possible to decline the call [from Browner's attorney] by not answering the phone," and that Pineiro "made moves to have [Browner] placed" in lockdown").    Given the careful scrutiny applicable to retaliation claims, those allegations are insufficient.

Browner's allegations implicating a due-process claim are also too vague to be served.    To be sure, prisoners are afforded due-process

12

protections in the administration of discipline.  *See, e.g., Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346 (11th Cir. 2016).   "But for an inmate to be entitled to those safeguards, he must have an interest sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to the minimum procedures appropriate under the circumstances and required by the Due Process Claus."  *Id.* (internal quotation marks, alterations, and citation omitted).   Such a liberty interest arises in two circumstances: (1) when the restraint exceeds the imposed sentence "in . . . an unexpected manner," and (2) when the change in the conditions of confinement "imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Id.* (internal quotation marks and citation omitted).   Courts have rejected due-process claims where inmates were held in segregated confinement for years.  *See Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) ("While [plaintiff's four-year confinement in administrative segregation was lengthy, it did not tip the balance in favor or establishing a liberty interest").   Browner's allegations of "a 9 month lockdown," without any allegations concerning the restrictions he was subjected to are, therefore, insufficient to support a due-process claim.   Finally, his allegations of multiple punishments

for the same conduct do not implicate his due-process rights.   *See, e.g.,*
*Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) ("Because the
Double Jeopardy clause only applies to proceedings that are essentially
criminal in nature, [cit.], it is well established that prison disciplinary
sanctions—such as administrative segregation—do not implicate double
jeopardy protections.").

Although Browner has failed to state any claim against Piniero, he
is entitled to an opportunity to amend those claims.   *See, e.g., Jenkins v.*
*Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more
carefully drafted complaint might state a claim, a district court should
give a *pro se* plaintiff at least one chance to amend the complaint before
the court dismisses the action.").   Accordingly, Browner is **DIRECTED**
to submit an Amended Complaint no later than October 20, 2023.   To
facilitate his preparation of the Amended Complaint, the Clerk is
**DIRECTED** to send him a blank Form Pro Se 14 (Complaint for
Violation of Civil Rights (Prisoner)).   Browner is advised that failure to
timely submit his amended complaint may result in a recommendation

that this case be dismissed for failure to obey a court order or failure to prosecute.   *See* Fed. R. Civ. P. 41(b).

Since the Court approves for service Browner's excessive force claims against Brown, Gibbs, Durant, and Zeck, and his deliberate indifference claims against Brown, Glen, Zeck, Durant, and Jane Doe, a copy of Plaintiff's Amended Complaint, doc. 15, his Motion to Amend, doc. 18, as discussed above, and a copy of this Order shall be served upon Defendants by the United States Marshal without prepayment of cost. The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff.   The Court also provides the following instructions to the parties that will apply to the remainder of this action.

## INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal.   Fed. R. Civ. P. 4(c)(3).   In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons.   Fed. R. Civ. P. 4(d); Local R. 4.5.   A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the

costs of personal service unless good cause can be shown for the failure to return the waiver.   Fed. R. Civ. P. 4(d).   Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver.   Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination.   Fed. R. Civ. P. 30(a)(2).   Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer.   Local R. 26.1.   Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.   As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any.   Defendants shall present such questions to the witness in order and word-for-word during

the deposition.   Fed. R. Civ. P. 30(c).   Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

<u>**INSTRUCTIONS TO PLAINTIFF**</u>

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.   Local R. 11.1.   Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).   Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.   Fed. R. Civ. P. 5.   "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."   Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.   For example, if Plaintiff wishes to obtain facts and information about the case

17

from a Defendant, Plaintiff must initiate discovery.   *See generally* Fed.
R. Civ. P. 26 to Fed. R. Civ. P. 37.   The discovery period in this case will
expire 140 days after the filing of the last answer.   Local R. 26.1.
Plaintiff does not need the permission of the Court to begin discovery,
and Plaintiff should begin discovery promptly and complete it within this
time period.   Id.   Discovery materials should **not** be filed routinely with
the Clerk of Court; exceptions include: when the Court directs filing;
when a party needs such materials in connection with a motion or
response, and then only to the extent necessary; and when needed for use
at trial.   Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated
persons.   See Fed. R. Civ. P. 33.   Interrogatories may be served only on
a **party** to the litigation, and, for the purposes of the instant case, this
means that interrogatories should not be directed to persons or
organizations who are **not named** as a defendant.   Interrogatories are
not to contain more than 25 questions.   Fed. R. Civ. P. 33(a).   If Plaintiff
wishes to propound more than 25 interrogatories to a party, Plaintiff
must have permission of the Court.   If Plaintiff wishes to file a motion
to compel, pursuant to Federal Rule of Civil Procedure 37, he should first

18

contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.   Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.   If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press this case forward, the court may dismiss it for failure to prosecute.   Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.   Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question

which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the

Defendant's motion.   Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.   Local R. 7.5, 56.1.   The failure to respond to such a motion shall indicate that there is no opposition to the motion.   Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.   If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.   That burden cannot be met by reliance on the conclusory allegations contained within the complaint.   If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.   If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

The Court must also assess Browner's filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects $15.17 in average monthly deposits. Doc. 13 at 1. Based upon his furnished information, he owes an initial partial filing fee of $3.03. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED,** this <u>27th</u> day of September, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA